Melinda PETTA, Appellant,

v.

Adrian RIVERA, Individually and in his official capacity as a Texas Department of Public Safety Highway Patrolman and the Texas Department of Public Safety, Appellees.

No. 13–97–661–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 30, 1998.

Rehearing Overruled Feb. 25, 1999.

Roy S. Dale, William D. Mount, Jr., Dale & Klein, L.L.P., McAllen, for Appellant.

Demetri Anastasiadis, Asst. Atty. Gen., Austin, Richard M. Berry, Asst. County Atty., Corpus Christi, Dan Morales, Atty. Gen., Jorge Vega, First Asst. Atty. Gen., Drew T. Durham, Dep. Atty. Gen. for Crim. Justice, Ann Kraatz, Asst. Atty. Gen. Chief, Law Enforcement Defense Div., Austin, for Appellees.

Before Chief Justice SEERDEN, and Justices DORSEY and CHAVEZ.

## OPINION

DORSEY, Justice.

This is an appeal from a take-nothing summary judgment. Melinda Petta sued appellees, The Texas Department of Public Safety (DPS) and one of its officers, Adrian Rivera, for personal injuries she allegedly received following a traffic stop and an ensuing high-speed chase. The trial court granted summary judgment for appellees. By seven points of error Petta asserts that appellees did not conclusively establish their entitlement to summary judgment. We reverse and remand.

A number of facts are strenuously disputed. However, as this is a summary judgment, we take the facts and the inferences from them in the light most favorable to the non-movant, Mrs. Petta. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Applying that method of reviewing the evidence, we take the following facts as correct.

On January 15, 1990, Melinda Petta and her two children were returning to Corpus Christi from the Rio Grande Valley. About 4:30 p.m. Officer Adrian Rivera stopped her for speeding on Farm Road 70, southwest of Corpus Christi. She gave Rivera her drivers license and proof of insurance and began arguing with him about how fast she was going. When he returned to his patrol car she raised her window due to the drizzle and because the air conditioner was on. Rivera returned to her vehicle and asked her to get out. She refused to get out because she had children with her, and she "was wary." Rivera tried to open her locked door and started yelling at her. He said, " 'Roll down the goddamn window, bitch!' " and " 'Get out of the car, bitch!' " He began beating on her window with his nightstick and threatened to break the glass. He threatened to tow her vehicle, and she in turn threatened to leave. He drove his car in front of her vehicle to block it. She backed up and pulled in front of him. He approached her window and screamed at her to get out, but she refused. Finally he pointed his .357 handgun at her face and said, " 'Then I'll just have to kill you, Bitch!' " At this point she drove away, and he chased her and fired a shot at her.

She was going about 85 m.p.h. and kept changing lanes to prevent him from passing her and cutting her off. She saw in her rear-view mirror that Rivera had pulled out his gun and was apparently taking aim. She continued to switch lanes to keep him from locking on target. She saw him pull out his shotgun, but a person who was with him took it away from him. Petta claims that during the chase Rivera fired at her a second time. The chase ended with Petta's arrest by several officers at her apartment. The record showed Rivera violated DPS rules because he "used harsh and profane language during the course of a traffic stop" and disobeyed a direct order not to shoot at Petta's vehicle.

## Procedural History

Because of Petta's flight from Rivera she was charged and convicted of fleeing or attempting to elude a police officer (Officer Rivera). This Court affirmed her conviction. See Petta v. State, 840 S.W.2d 721 (Tex. App.—Corpus Christi 1992, pet. ref'd). Petta sued the DPS and Rivera, in his official capacity, for liability under the Texas Tort Claims Act (TTCA). She alleged the DPS was liable to her for personal injuries, specifically severe mental anguish, grief, emotional pain, torment, indignation, shame, despair, suffering, and public humiliation proximately caused by the wrongful acts, omissions, and negligence of the DPS and Rivera while acting in the scope of his employment. She also sued appellees for spoliation of evidence, and for use of excessive force under 42 U.S.C. § 1983. She sued Rivera, in his individually capacity, for assault, aggravated assault, battery, reckless conduct, and terroristic threat. The trial court granted summary judgment for appellees, and Petta appealed the case to this Court. We reversed the judgment and remanded the case to the trial court. See Petta v. Rivera, 923 S.W.2d 678, 688 (Tex. App.—Corpus Christi 1996, writ denied) (Petta 1 ).

After remand appellees filed a joint summary judgment motion in which they asserted that collateral estoppel barred this suit. In this same motion the DPS alleged that sovereign immunity barred the suit. Appellees filed a joint supplemental summary judgment motion, alleging the defense of public policy barred this suit. The trial court granted summary judgment for appellees, and Petta appeals from this judgment.

Summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery, Science Spectrum v. Martinez, 941 S.W.2d 910, 911 (Tex.1997), or pleads and conclusively establishes each element of an affirmative defense. Science Spectrum, 941 S.W.2d at 911; City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979). When reviewing a summary judgment we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. Nixon, 690 S.W.2d at 549.

## Collateral Estoppel

By points one and two Petta asserts the trial court erred in granting summary judgment because appellees did not establish their affirmative defense of collateral estoppel. The doctrine of collateral estoppel is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues. Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d 796, 801 (Tex.1994). A party seeking to assert collateral estoppel must establish: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. Trapnell, 890 S.W.2d at 801. See HECI Exploration Co. v. Neel, 42 Tex. Sup. Ct. J. 93, 99 n. 2, 982 S.W.2d 881, 890 n. 2, (1998). Collateral estoppel requires that the issue decided in the first action be identical to the issue in the pending action. Getty Oil Co. v. Insurance Co. of N. Am., 845 S.W.2d 794, 802 (Tex.1992). In Tarter v. Metropolitan Sav. & Loan Ass'n, 744 S.W.2d 926 (Tex.1988) the court stated "The doctrine applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." Tarter, 744 S.W.2d at 927 (citing Bon-

*niwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984)) (emphasis added).

A prior criminal conviction may work an estoppel in favor of the government in a later civil proceeding. *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568, 71 S.Ct. 408, 95 L.Ed. 534 (1951). This estoppel extends only to questions " 'distinctly put in issue and directly determined' " in the criminal prosecution. *Emich Motors,* 340 U.S. at 569, 71 S.Ct. 408. In the case of a criminal conviction based on a jury verdict of guilty issues which were essential to the verdict must be regarded as having been determined by the judgment. *Emich Motors,* 340 U.S. at 569, 71 S.Ct. 408.

In the instant case the trial court charged the jury in Petta's criminal case on fleeing or attempting to elude a police officer as well as the defense of necessity. The charge stated, in relevant part:

> Now, therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Melinda Petta, on or about the 15th day of January, 1990, in the County of Nueces and State of Texas did then and there flee from a uniformed law enforcement officer to-wit: Adrian O. Rivera as charged but you further believe from the evidence or have a reasonable doubt thereof that at the time the defendant did the act aforesaid, if any, the defendant, Melinda Petta, reasonably believed that such act was immediately necessary to avoid imminent harm, to-wit: Adrian O. Rivera, causing bodily injury or death to herself or her children and you further find or have a reasonable doubt thereof that the desirability and urgency of avoiding the harm clearly outweighed according to ordinary standards of reasonableness the harm sought to be prevented by the law denouncing the conduct of the said Melinda Petta, you will acquit the defendant and say by your verdict not guilty. If, however, you belief [sic] from the evidence beyond a reasonable doubt that the Defendant, Melinda Petta, did not have a reasonable belief of D.P.S. Trooper Adrian O. Rivera causing bodily injury or death to herself or her children viewing the facts from the Defendant's standpoint at the time, then you will find against her on her plea of necessity.

Appellees' contention is that because the jury found Petta guilty it rejected her necessity defense. By rejecting her defense it also rejected the facts and issues needed to establish this defense. Thus collateral estoppel barred Petta from relitigating these facts and issues in her civil suit.

Petta based her civil claims on Rivera's conduct occurring after the initial stop *and* during the ensuing chase. The question she faces in her civil suit is whether those facts support her claims against appellees. However the criminal jury did not decide this question; rather, it decided her necessity defense, which was whether Petta reasonably believed her flight was immediately necessary to avoid imminent harm. By its decision to reject this defense the jury could have found that when Rivera pointed his gun at Petta she did not have a reasonable belief that flight was immediately necessary to avoid imminent harm. That is not the equivalent of finding that Rivera did not point his gun at her, or that such actions by Rivera were justified.

Also, in *rejecting her defense and implicitly finding that flight was not necessary to protect her from harm, the jury did not necessarily reject Petta's accusations of what occurred during the chase. That is, that Rivera did not chase her at high speed, point a gun at her during the chase, and shoot at her in contravention of direct orders from his superiors not to fire at her. His pursuit of her and his actions during that chase were not " 'distinctly put in issue and directly determined' " in the criminal trial. *See Emich Motors,* 340 U.S. at 569, 71 S.Ct. 408; *Tarter,* 744 S.W.2d at 927.

Appellees further argue that because the Fifth Circuit found against the Petta children on their section 1983 claim, collateral estoppel barred Petta's section 1983 claim in state court. Petta's two children, who were with her at the time of the chase, were plaintiffs in this case until the trial court granted nonsuits for them. Afterwards Petta filed suit on their behalf against appellees in federal district court. One of the federal-court

claims was a section 1983 claim for use of excessive force in violation of the Fourth and Fourteenth Amendments. Rivera moved for summary judgment on the basis of qualified immunity. The district court granted him summary judgment on the Fourth Amendment claim, but denied his motion on the Fourteenth Amendment claim. A panel of the Fifth Circuit reversed and rendered judgment for Rivera over a strong dissent. *Petta v. Rivera*, 143 F.3d 895, 911 (5th Cir. 1998). The basis of the holding was the children suffered only psychological injuries.

■ However, appellees did not move for summary judgment on this basis. A movant for summary judgment must present the reasons for judgment in writing and before the trial judge at the hearing. *City of Houston*, 589 S.W.2d at 677. Thus we cannot affirm summary judgment on grounds not expressly set out in the motion. *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993). Accordingly appellees did not establish their defense of collateral estoppel. *See Trapnell*, 890 S.W.2d at 801. We hold the trial court erred if it granted summary judgment based upon collateral estoppel. We sustain points one and two.

### Public Policy Defense

■ By point three Petta asserts the trial court erred in granting summary judgment because appellees did not establish their affirmative defense of public policy. Appellees assert that as a matter of law they are entitled to summary judgment, because public policy does not allow a party to obtain relief in a civil action when the action is based on illegal acts. In *Gulf, C. & S.F. Ry. Co. v. Johnson*, 71 Tex. 619, 9 S.W. 602 (Tex.1888) the supreme court recognized "It may be assumed, as undisputed doctrine, that no action will lie to recover a claim for damages, if to establish it the plaintiff requires aid from an illegal transaction, or is under the necessity of showing or in any manner depending upon an illegal act to which he is a party." *Johnson*, 9 S.W. at 603. "In those cases where it is shown that, at the time of the injury, the plaintiff was engaged in the denounced or illegal act, the rule is, if the illegal act contributed to the injury, he cannot recover; but, *if plaintiff's act did not contribute to the injury, the fact alone that at the time he was engaged in an act in violation of law will not of itself preclude a recovery." Johnson*, 9 S.W. at 603 (emphasis added).

In recent applications of the rule, two courts of appeal have held that the plaintiffs' convictions of bank-and-tax fraud barred legal malpractice actions against their lawyers. *Saks v. Sawtelle, Goode, Davidson & Troilo*, 880 S.W.2d 466 (Tex.App.—San Antonio 1994, writ denied) (bank fraud); *Dover v. Baker, Brown, Sharman & Parker*, 859 S.W.2d 441 (Tex.App.-Houston [1st Dist.] 1993, no writ) (tax-and-bank fraud). Both applied the principle that a party will not be allowed to recover in a civil action when it is based on illegal acts. *Dover*, 859 at 450. In both cases the convicted plaintiffs were knowing and wilful participants in the illegal acts that contributed to their injuries. The illegal acts were inextricably intertwined with their claims and were not merely incidental to them.

■ In the instant case the evidence showed Petta fled when Rivera pointed his gun at her and threatened to kill her. Although a jury convicted her of fleeing or attempting to elude a police officer, the evidence does not show that her conduct contributed to her alleged injuries. Petta's flight did not cause Rivera to call her a bitch, beat on her window with a nightstick, point a gun at her, threaten to kill her, chase her at high speed, or shoot at her and her children. The defense of public policy does not preclude Petta from bringing suit to recover damages resulting from appellees' acts. *See Johnson*, 9 S.W. at 603. We hold the trial court erred by granting summary judgment on the defense of public policy. We sustain point three.

By point four Petta asserts the trial court erred in granting summary judgment because appellees did not establish their affirmative defense of sovereign immunity. The DPS moved for summary judgment on the basis that sovereign immunity barred this suit, and the exceptions to its immunity do not apply because: (1) section 101.057 of the Texas Civil Practice and Remedies Code pre-

vents suit for all intentional torts; (2) Petta may not sue the DPS on any negligence theory because there were no physical injuries; and (3) Petta may not sue the DPS under the Texas Constitution.

## 1. Section 101.057

 A plaintiff may not sue the State, its agencies, or its officers without the consent of the Texas Legislature. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). By enactment of the TTCA the Legislature expressly waived immunity to suits by injured claimants and consented to liability under specified circumstances. The TTCA provides, in relevant part, that a governmental unit is liable for personal injury:

proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the ... personal injury ... arises from the operation or use of a motor-driven vehicle .... and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury ... so caused by a condition or use of tangible personal ... property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). However the TTCA does not apply to a "claim ... *arising out of* assault, battery, ... or any other intentional tort...." TEX. CIV. PRAC. & REM.CODE ANN. § 101.057(2) (Vernon 1997) (emphasis added). In other words the TTCA does not waive governmental immunity if an intentional tort is charged.

The supreme court discussed the intentional-tort exception in *Delaney v. University of Houston*, 835 S.W.2d 56 (Tex.1992). In *Delaney* a university student, Andrea Delaney, lived in a university dormitory which had a broken lock on an outside door. An intruder entered the dormitory through this door and raped her. She sued the university, alleging it was liable for her damages because it failed to repair the broken lock. The trial court granted summary judgment for the university on the basis that her causes of action were barred by governmental immunity because they arose out of an intentional tort. The court of appeals affirmed. On appeal to the Texas Supreme Court the university argued that however Delaney characterized her claims, whether contractual, tort, or statutory, they arose out of her rape and therefore fell within section 101.057(2). The supreme court stated:

We think that "arising out of" in [section 101.057] ... requires a certain nexus for the provision to apply. In section 101.057(2), that nexus is between the claim and an intentional tort. In essence, section 101.057(2) excludes from the Act's waiver of immunity claims for intentional torts. That section, like section 101.021, does not specify whose actions are referred to; that is, section 101.057(2) does not state whether the tortfeasor must be the governmental employee or could be a third party. As with section 101.021, we think that the more plausible reading of the provision is that the tortfeasor must be the governmental employee whose conduct is the subject of complaint. We are persuaded of this construction for two reasons.

One is that the United States Supreme Court has adopted this same view of similar language in the Federal Tort Claims Act, which excludes from the waiver of federal governmental immunity "[a]ny claim arising out of assault, battery, false imprisonment," or certain other conduct. 28 U.S.C. § 2680(h)....

The other reason we reach the conclusion we do is because it is more consistent with the legal principle that intentional conduct intervening between a negligent act and the result does not always vitiate liability for the negligence.

*Delaney*, 835 S.W.2d at 59–60. The court held that Delaney's action against the university was not barred because the rapist was not a governmental employee, and Delaney's claims for the university's *failure to repair the lock* were distinct from the rape she suffered.

Applying *Delaney* to the facts of this case, we conclude that because Rivera was a government employee the exception to the

TTCA's waiver of immunity applies to his intentional conduct. No liability can attach to the state for the intentional tort of its employee. But we must consider separately the allegations of negligence against the DPS.

The *Delaney* court relied on an opinion from the U.S. Supreme Court applying similar language in the Federal Tort Claims Act. In *Sheridan v. United States,* 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988) plaintiffs sued the United States for damages they suffered when an intoxicated, off-duty serviceman fired several rifle shots into their car. They alleged government employees were negligent in finding the serviceman intoxicated and in possession of a rifle, and allowing him to leave without trying to stop him or to summon other authorities to assist in doing so. The Court held that plaintiffs' claim was not one "arising out of" an assault or battery within the meaning of the federal statute because it arose instead out of the government's alleged negligence in allowing the incident to occur. *Sheridan,* 487 U.S. at 401–403, 108 S.Ct. 2449. The Court rejected the argument that "arising out of" included any claim, regardless of its nature, for injuries caused by someone's intentional tort. *Sheridan,* 487 U.S. at 398, 108 S.Ct. 2449.

■ Petta alleged Rivera negligently and wrongfully "carried out" DPS policy. She alleged the DPS is liable for her injuries because it negligently implemented, or alternatively, failed to implement its policy with respect to Rivera. These policies included firearms policy, hot-pursuit policy, use of force, public duty, use of deadly force, necessity, arrest and search, courtesy, subject-control tactics, operation of vehicle, recognizing and handling abnormal persons, and patrol procedures. She alleged the DPS failed to furnish proper training, instruction, training manuals, and documents to Rivera prior to this incident, including a DPS general manual, DPS general orders, DPS safety communications manual, DPS highway patrol manual, DPS education manual, and DPS criminal law enforcement manual. She alleged the DPS' negligent failure to furnish the manuals and training documents, which constituted tangible personal property, was a proximate cause of her injuries. She asserts that if Rivera had received the proper training as well as the manuals he would not have acted negligently and wrongfully in carrying out DPS policy, which proximately caused her injuries. Petta also alleged under section 101.021 that her injuries arose out of Rivera's negligent operation and use of a motor-driven vehicle (his DPS car) and tangible personal property (his nightstick, revolver, and shotgun). Specifically, Rivera, as a DPS employee, was acting within the scope of his authority in a motor-driven vehicle when he stopped her and wrongfully and negligently detained her without probable cause by blocking her vehicle with his DPS vehicle. He beat upon her window with a nightstick, pointed his revolver and shotgun at her, and shot at her. This constituted wrongful, negligent use of tangible personal property.

Based on these allegations the pendent claims of negligence do not relate to Rivera's intentional acts; they relate to the alleged negligent acts or omission which occurred prior to this incident. The DPS' alleged negligence occurred when its acts or omissions allowed the incident to occur. *See Sheridan,* 487 U.S. at 401–03, 108 S.Ct. 2449; *Delaney,* 835 S.W.2d at 60; *Jefferson County v. Sterk,* 830 S.W.2d 260, (Tex.App.—Beaumont 1992, writ denied) (although governmental immunity barred intentional tort, injured party may pursue claim for simple negligence arising out of the same facts).

We conclude a nexus exists between Rivera's and the DPS's use or misuse of tangible personal property and the alleged negligent conduct causing Petta's injuries under circumstances when private liability would exist. Accordingly Petta has stated a claim under the TTCA, and the intentional-tort exception of section 101.057 does not bar her suit.

■ We also conclude sovereign immunity does not bar Petta's section 1983 claim. In *Thomas v. Allen,* 837 S.W.2d 631 (Tex. 1992) (per curiam) the court recognized the decision in *Howlett v. Rose,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). In *Howlett* the Court held that a state court could not refuse to entertain a section 1983 claim

on the ground that the defense of sovereign immunity barred the claim. *Thomas,* 837 S.W.2d at 632 (citing *Howlett,* 496 U.S. at 370, 110 S.Ct. 2430).

Concerning the claims for assault and battery Petta sued Rivera in his individual capacity for assault and battery. The State moved for summary judgment on the basis of sovereign immunity, but Rivera did not move for summary judgment on the grounds of official immunity, or that he acted within the course and scope of his discretionary authority. The Texas Supreme Court has said that official immunity protects individual officials from liability, and sovereign immunity protects governmental entities from liability. *DeWitt v. Harris County,* 904 S.W.2d 650, 653 (Tex.1995). Because Rivera did not move for summary judgment on the basis of official immunity sovereign immunity does not justify dismissal of these claims against him.

### 2. Physical Harm

The DPS argues Petta may not sue it on any negligence theory because there were no physical injuries. In *Boyles v. Kerr* 855 S.W.2d 593 (Tex.1993) the court said there is no general duty not to negligently inflict emotional distress on another. Instead a claimant should receive compensation for mental anguish damages only in connection with a defendant's breach of some other duty imposed by law. *Boyles,* 855 S.W.2d at 596, 597. In other words negligent infliction of emotional distress is no longer recognized as an independent tort, but compensation for emotional distress is recoverable as an element of damages arising from a defendant's breach of some other legal duty owed the plaintiff. *Boyles,* 855 S.W.2d at 597. The *Boyles* court stated, "[we] ... are not imposing a requirement that emotional distress manifest itself physically to be compensable.... Where emotional distress is a recognized element of damages for breach of a legal duty, the claimant may recover without demonstrating a physical manifestation of the emotional distress." *Boyles,* 855 S.W.2d at 598.

As an example of other duties, the breach of which supports recovery for mental an-

guish, the *Boyles* court cited *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627 (Tex.1967). In *Fisher* the court stated that an intentional grabbing of a patron's dinner plate by the hotel's club manager in a loud and offensive manner was sufficient to constitute a battery for which mental suffering damages are recoverable without the necessity of showing physical injury. In discussing the justification for this rule the court stated that damages for mental suffering are recoverable without the necessity for showing actual physical injury in a case of willful battery because the basis of that action is the unpermitted and intentional invasion of the plaintiff's person and not the actual harm done to the plaintiff's body. Personal indignity is the essence of an action for battery; and consequently the defendant is liable not only for contacts which do actual physical harm, but also for those which are offensive and insulting. *Fisher,* 424 S.W.2d at 630.

In the instant case Petta alleged that Rivera committed assault and battery by verbally threatening to kill her, pointing a handgun and shotgun at her, calling her a bitch, beating excessively on her vehicle's window with a nightstick and threatening to break the glass, shooting at her vehicle, and trying to run her off the road. These acts constitute assault and battery. Rivera knowingly or recklessly threatened her with imminent bodily injury by his actions. Further he knowingly or recklessly caused physical contact with her when he knew or should have reasonably believed that she would regard the contact as offensive or provocative. We hold, therefore, that Petta is entitled to actual damages for mental suffering due to the willful battery, even in the absence of any physical injury. *See Fisher,* 424 S.W.2d at 630; *Petta,* 923 S.W.2d at 689.

### 3. Res Judicata

By point five Petta asserts the trial court erred in granting summary judgment on the basis of res judicata because appellees did not assert this defense as a ground for summary judgment. In their summary judgment motion appellees alleged they have pled res judicata and state that the same grounds and argument in *Petta 1* apply

to this case. But in *Petta 1* appellees' summary judgment motion did not specifically allege res judicata. However, res judicata does not bar this suit. Res judicata precludes relitigation of claims that are finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex. 1992). It requires proof of three elements: (1) a prior, final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. United States Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996).

In the instant case Petta's criminal conviction does not act as a prior, final judgment on the merits of this case. Thus appellees have not established the affirmative defense of res judicata. See *Amstadt,* 919 S.W.2d at 652. We sustain point five.

### 3. Texas Constitution

Concerning the DPS' assertion that Petta cannot sue it for claims under the Texas Constitution the pleadings show Petta is not suing the DPS or Rivera under the Texas Constitution. We hold the trial court erred if it granted summary judgment on the basis of sovereign immunity. We sustain point five.

Due to our disposition of the above points we need not address Petta's remaining points. TEX.R.APP. P. 47.1.

We REVERSE the judgment and REMAND the case to the trial court.