James C. JOHNSTON, M.D., Appellant,

v.

AMERICAN MEDICAL INTERNATIONAL, et al., Appellees.

No. 12–99–00404–CV.

Court of Appeals of Texas, Tyler.

Aug. 14, 2000.

Don Kent, Houston, Robert T. Cain, Jr., Lufkin, R. Brian Craft, Tyler, David L. Allen, Lufkin, Daniel M. McClure, Houston, appellees.

Panel consisted of DAVIS, C.J., HADDEN, J., and WORTHEN, J.

LEONARD DAVIS, Chief Justice.

Appellant James Johnston, M.D., appeals the summary judgments granted for Appellees American Medical International, AMI Nacogdoches Medical Center Hospital, National Medical Enterprises, Morris Jackson, M.D., William Jones, M.D., Lisa Jackson, M.D., John Haidinyak, M.D., Tim James and Greta Haidinyak (collectively "Appellees"). Johnston raises three issues on appeal. We affirm.

## BACKGROUND

Johnston, a neurologist, was charged with attempted sexual assault on eight of his female patients. He was tried and acquitted of attempted sexual assault, but the jury hung on the lesser included offense of assault. The court declared a mistrial and Appellee Tim James, the district attorney, vowed to try the case again. Johnston was offered a plea bargain, which he accepted. He pleaded guilty to eight counts of simple assault by contact, Class C misdemeanors, paid a fine, and agreed to attend a treatment/evaluation program at Baylor College of Medicine.

Johnston filed suit against the Appellees based upon various causes of action, including civil conspiracy, tortious interference, breach of fiduciary duty and good faith and fair dealing, intentional infliction of emotional distress, negligence and breach of contract. He based his allegations upon his belief that the hospital for which he worked, along with other doctors in the same hospital system, wanted to punish him for reading and interpreting his own imaging tests, which reduced the amount of income to the hospital from insurance claims, as well as lessened the

Arnold Vickery, Houston, Richard S. Fischer, Nacogdoches, for appellant.

hospital's radiologists' personal income. In addition, Johnston competed for business against the only anesthesiologist at the hospital, John Haidinyak, in the area of pain therapy. Johnston alleged that as a consequence of his actions, the hospital and doctors concocted a scheme whereby he was falsely accused of sexual misconduct with patients so that he would be discredited and forced to quit his practice in Nacogdoches. The district attorney's office purportedly actively participated in the plan because an assistant district attorney, Greta Haidinyak, was married to the anesthesiologist.

After Johnston filed his civil suit, the Appellees moved for summary judgment on three grounds that (1) collateral estoppel arising from Johnston's guilty plea barred his claims, (2) all of his damages were based on the conviction, and (3) Texas public policy forbids a party who is convicted of a crime from bringing suit for damages arising from his prosecution and conviction. Tim James and Greta Haidinyak, prosecutors in the criminal proceeding, also moved for summary judgment on the grounds of absolute official immunity. The trial court granted summary judgment for all Appellees on unspecified grounds.

### SUMMARY JUDGMENT STANDARD OF REVIEW

■■ In reviewing a traditional summary judgment,[1] this Court must apply the standards established in *Nixon* v. *Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985), which are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that his entitlement to judgment is as a matter of law. TEX.R. CIV. P. 166a(c). A movant must either negate at least one essential element of the nonmovant's cause of action, or prove all essential elements of an affirmative defense. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). Since the burden of proof is on the movant, and all doubts about the existence of a genuine issue of a material fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits and other summary judgment proof. The only question is whether or not an issue of material fact is presented. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929 (1952). Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

■■ When a summary judgment does not specify or state the grounds relied on, as in the instant case, the summary judgment will be affirmed on appeal if any of the grounds presented in the motion are meritorious. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995). In other words, the appellant is required to show that each ground alleged in the motion for summary judgment

---

**1.** TEX.R. CIV. P. 166a(c).

was insufficient to support summary judgment. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995); *Malooly Bros. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970) (a summary judgment must stand if it may have been based on a ground not specifically challenged by the plaintiff and if there was no general assignment that the trial court erred in granting summary judgment).

### COLLATERAL ESTOPPEL

■■■■ Collateral estoppel "bars relitigation of any ultimate issue of fact which was litigated and essential to the judgment in a prior suit." *Francis v. Marshall*, 841 S.W.2d 51, 54 (Tex.App.—Houston [14th Dist.] 1992, no writ). Collateral estoppel applies when:

> (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action, (2) those facts were essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action. Strict mutuality of parties is no longer required. It is only necessary that the party against whom the doctrine is asserted was a party or in privity with a party in the first action. [citations omitted]

*Neely v. Commission for Lawyer Discipline*, 976 S.W.2d 824, 827 (Tex.App.—Houston [1st Dist.] 1998, no writ). A prior conviction may work a collateral estoppel in a subsequent proceeding if the identical issues for which estoppel is sought were litigated and directly determined in the prior criminal proceeding. *McCormick v. Texas Commerce Bank*, 751 S.W.2d 887, 889 (Tex.App.—Houston [14th Dist.] 1988, writ denied). When an "issue ... was litigated and critical to the prior criminal conviction, [the convicted party] 'is estopped from attacking the judgment or any issue necessarily decided by the guilty verdict.'" *Francis*, 841 S.W.2d at 54. Thus, a criminal defendant cannot litigate the issue of his guilt again in a civil action, since a fully litigated issue should not be

retried. *Dover v. Baker, Brown, Sharman & Parker*, 859 S.W.2d 441, 447 (Tex.App.—Houston [1st Dist.] 1993, no writ). Further, a plea of guilty, as opposed to a conviction after trial, also collaterally estops a plaintiff from relitigating his guilt, since "a valid guilty plea serves as a full and fair litigation of the facts necessary to establish the elements of the crime." *State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 378, 384 (5th Cir.1997).

### VIOLATION OF PENAL CODE

■■■■ In his first issue, Johnston complains that the trial court's summary judgments violate section 12.03(c) of the Texas Penal Code which states, "[c]onviction of a Class C misdemeanor does not impose any legal disability or disadvantage." TEX. PEN.CODE ANN. § 12.03(c) (Vernon 2000). Johnston argues that the use of a misdemeanor to bar a civil suit constitutes a "disadvantage," and consequently, cannot be used in such a manner. We disagree. Caselaw supports the premise that collateral estoppel is not considered a "disadvantage" for purposes of section 12.03(c). There are numerous cases in which a conviction for a misdemeanor is used to collaterally estop a civil suit. For example, in *Boozier v. Hambrick*, 846 S.W.2d 593 (Tex.App.—Houston [1st Dist.] 1993, no writ), Hambrick was convicted of assault by contact. When he filed a civil suit against Boozier for defamation and intentional infliction of emotional distress based upon the criminal conviction, the court held that he was collaterally estopped from relitigating his guilt and granted summary judgment for Boozier. In *Jackson v. Smith Security Service*, 786 S.W.2d 787 (Tex.App.—Houston [1st Dist.] 1990, no writ), Jackson was convicted of shoplifting. When she brought suit against the department store and security firm, claiming that they had engaged in a malicious and unjustified civil conspiracy to frame her, the court held that the defendants were entitled to summary judgment because of the preclusive effect of Jackson's conviction.

Furthermore, Class C misdemeanor convictions *do* create disadvantages, as that term is commonly used. For example, a person convicted of a Class C misdemeanor must pay a fine or participate in community service as punishment for his violation. His car insurance payments could increase, or his insurance could be canceled altogether. Moreover, a truck driver's or courier's employment could be terminated and a renter could be evicted from his apartment for committing a Class C infraction. We hold, therefore, that the use of a Class C misdemeanor to collaterally estop a civil suit is not a "disadvantage" as contemplated by the Legislature, and thus does not violate section 12.03(c) of the Texas Penal Code. Issue one is overruled.

### APPLICATION OF COLLATERAL ESTOPPEL UNDER CIRCUMSTANCES OF THIS CASE

#### Identity of Issues

 In his multi-faceted second issue, Johnston argues that the trial court erred when it applied collateral estoppel in the instant case because there is no distinct identity of issues. In other words, the issue to be litigated in his civil action is not identical to the issue determined in the criminal action. Johnston cites *Petta v. Rivera*, 985 S.W.2d 199 (Tex.App.—Corpus Christi 1998, pet. granted) in support of his position. We distinguish *Petta*, however, because at issue in the criminal proceeding was Petta's conduct. Whereas, it was Rivera's conduct which was at issue in the civil proceeding. In *Petta*, the plaintiff had been convicted of the crime of "fleeing or attempting to elude a police officer." She then sued Rivera, the police officer, for his conduct "after the initial stop and during the ensuing chase." The court of appeals found that Petta's criminal conviction did not adjudicate whether Rivera behaved as alleged. In the instant case, Johnston's act of assault was the issue fully and fairly litigated in his criminal proceeding. It is also the issue which he

wishes to relitigate in his civil action. Therefore, we find no merit in Johnston's argument.

#### Militating Factors

Johnston next asserts that collateral estoppel is a discretionary and equitable doctrine which should not be applied where, as here, there are conflicting prior adjudications, no motivation to defend against the misdemeanor charges, and other factors militating against it. He first asserts that an administrative law judge held a hearing for the Texas Medical Board to determine if Johnston's medical license should be revoked. After hearing all the evidence, she branded the charges against Johnston as "pure fabrications" and "fiction." Johnston argues that this is a conflicting prior adjudication. He also maintains that he had no motivation to defend against the misdemeanor charges because he was told by a juror in his criminal trial that he would never get a fair trial and would no doubt be convicted of a felony in a second trial if he did not plead guilty to assault by contact.

 Offensive collateral estoppel is used by a plaintiff "seeking to estop a defendant from relitigating an issue which the defendant previously litigated and lost in a suit involving another party." *Fletcher v. Nat'l Bank of Commerce*, 825 S.W.2d 176, 177 (Tex.App.—Amarillo 1992, no writ). Defensive collateral estoppel, on the other hand, is "where estoppel is claimed because a plaintiff previously litigated and lost an issue against another defendant." *Id.* In the case before us, defensive collateral estoppel is applied. Conflicting adjudications and motivation to defend are factors used only in deciding whether to apply *offensive* collateral estoppel, not *defensive* collateral estoppel. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). "Defensive use of collateral estoppel does not trigger application of the *Parklane* factors." *Mann v. Old Republic Nat'l Title Ins. Co.*, 975 S.W.2d 347, 351 (Tex.

App.—Houston [14th Dist.] 1998, no writ). Therefore, the trial court was not required to consider conflicting prior adjudications and no motivation to defend before applying defensive collateral estoppel in the instant case.

### Absence of Judicial Confession

Johnston also argues that since the judge did not ask him if he was guilty and his guilty plea was not sworn to, his guilty plea cannot be used to collaterally estop him from relitigating his guilt. He seeks to impose a rule requiring a judicial confession in addition to a guilty plea in order to apply collateral estoppel. He offers no authority for his position and admits that no such requirement exists. Johnston signed a "Plea of Guilty, Waiver, Stipulation and *Judicial Confession*"(emphasis added). Specifically, the document states,

I do further admit and judicially confess that I knowingly, intentionally and unlawfully committed the lesser included acts alleged in the indictment in this cause at the time and place and in the manner alleged, and that I am in fact GUILTY of the offense of *Assault by Contact—8 Counts* ...

Johnston used powerful and unequivocal language when he admitted committing these serious violations. He does not argue that he did not sign the confession. He also admits that most judges taking pleas for Class C misdemeanor offenses do not make inquiries concerning the factual bases of those pleas. There is no rule which requires a judge to do so.

Further, the criminal judgment in the instant case provides the following:

After being so admonished [of the waiver of certain rights], the Defendant persisted [in] pleading guilty; and it plainly appearing to the Court that the said Defendant is sane and mentally competent[,] that he is not influenced in making said plea by any consideration of fear, or delusive hope of pardon or any reason other than his guilt prompting him to confess his guilt, and the pleas are made voluntarily ... It is therefore Ordered, Adjudged and Decreed by the Court that the Defendant is guilty of the lesser offense of Assault by Contact—8 Counts ...

There is no reporter's record of the plea. Consequently, we have nothing to review other than the written plea and the judgment. In the absence of a reporter's record of the actual proceedings, the judgment is deemed conclusive that nothing but his guilt prompted Johnston to confess his guilt. *See Bogs v. Bogs,* 703 S.W.2d 407, 410 (Tex.App.—Beaumont 1986, no writ).

Although we are not holding that a judicial confession is required in order to use a guilty plea for collateral estoppel purposes, we do hold that Johnston's plea constitutes a judicial confession because, sworn or not, his words had meaning and legal consequences flowed therefrom. However, even if the plea does not constitute a judicial confession, Johnston waived error when he failed to bring up a reporter's record of the proceedings. *See Id.*

### The Plea as Hearsay

In his second issue, Johnston also asserts that because Rule 803(22) of the Rules of Evidence allows the admission of evidence of a felony but does not specifically allow for evidence of a misdemeanor, the judgment and plea are not admissible and, therefore, cannot support collateral estoppel in his civil action. However, there are two other rules which would exempt a guilty plea in a misdemeanor case from the hearsay rule. Rule 801 provides that an admission by a party-opponent is not hearsay. Tex.R. Evid. 801(e)(2). And, the guilty plea would fall under an exception to the hearsay rule as a statement against interest. Tex.R. Evid. 803(24). Accordingly, we find no merit to this argument.

### Pre–Rules Common Law Militates Against Application of Collateral Estoppel

In his last argument against application of collateral estoppel, Johnston argues that

prior to 1984, it was well settled that a prior adjudication of an issue in a criminal matter was not res judicata or estoppel by judgment to a subsequent civil action involving the same fact issue. *Citing State v. Benavidez,* 365 S.W.2d 638 (Tex.1963); *Bounds v. Caudle,* 560 S.W.2d 925 (Tex. 1978). We, however, fail to see why this would militate against the application of collateral estoppel in the instant case, since the guilty plea and convictions occurred in 1994 and the summary judgments were granted in 1999. *See Boozier,* 846 S.W.2d at 597–98; *Jackson,* 786 S.W.2d at 789. Accordingly, we overrule issue two.

### CONCLUSION

The hospital and physicians raised three alternative grounds for summary judgment. The prosecutors raised the same three, plus official immunity. On appeal, Johnston fails to address Appellees' contention that they were entitled to judgment as a matter of Texas public policy which bars a person convicted of a crime from suing others for damages caused by the conviction. Consequently, we could affirm the summary judgments on that basis alone. *See Star–Telegram, Inc.,* 915 S.W.2d at 473. However, in the interest of justice, we have addressed Johnston's complaint that collateral estoppel should not preclude his civil action against the Appellees. Based upon our above analysis, we hold that the trial court did not err when it granted summary judgment for all Appellees on the basis of collateral estoppel. Further, because the trial court's order did not specify the grounds upon which it granted summary judgment, it is unnecessary to address Johnston's last issue on official immunity. *See Harwell,* 896 S.W.2d at 173. Accordingly, we affirm the judgment of the trial court.