In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-043 CV


____________________



YARBROUGH'S DIRT PIT, INC., Appellant



V.



JOE TURNER, Appellee






On Appeal from the 88th District Court


Hardin County, Texas


Trial Cause No. 38,493






OPINION



 Joe Turner sued Elizabeth Stanley and appellant Yarbrough's Dirt Pit, Inc. for
personal injuries Turner sustained in a vehicular accident. After Turner settled with
Stanley, she was dropped from the suit in an amended petition and is not a party to this
appeal. (1) In an earlier case, which this court recently affirmed on appeal, Stanley sued
Yarbrough's Dirt Pit, Inc. and its employee, John Snider, for negligence arising out of the
same accident and set of facts; a jury found in Stanley's favor in that earlier case, and
judgment was entered against Yarbrough and Snider. See Snider v. Stanley, 44 S.W.3d
713 (Tex. App.--Beaumont 2001, pet. denied). In the instant case, the trial court relied
upon the estoppel effect of the prior judgment and granted partial summary judgment in
favor of Turner. The parties then stipulated to Turner's damages and Yarbrough filed this
appeal. 

Facts


 Turner was driving a logging truck southbound near Sour Lake, Texas, on Highway
326. Entering Highway 326 from another road, Stanley's van struck Turner's logging
truck. Yarbrough's dump truck was parked beside Highway 326. Turner claimed the
dump truck blocked Stanley's view of oncoming traffic and caused the accident in which
he was injured. 

Bases For Summary Judgment


 Turner filed a motion for partial summary judgment based on the following
grounds:


 Yarbrough's Dirt Pit is precluded by the doctrine of collateral
estoppel from relitigating an issue -- namely its negligence -- already
decided by prior litigation. 


 2. Expert testimony establishes as a matter of law that Turner is not
contributorily negligent. 


When a party moves for summary judgment, he must establish his right to summary
judgment on the issues expressly presented to the trial court by conclusively proving all
elements of his cause of action or defense as a matter of law. See Havlen v. McDougall,
22 S.W.3d 343, 345 (Tex. 2000). In the instant case, for Turner to obtain summary
judgment on his negligence suit against Yarbrough, Turner had to establish that
Yarbrough's Dirt Pit was negligent and that he was not.

Contributory Negligence


 Yarbrough affirmatively pleaded Turner's alleged contributory negligence in
causing the accident. To disprove contributory negligence, Turner attached as summary
judgment proof certain excerpts from the deposition testimony of Officer Gillespie and two
expert witnesses,William Nalle and Joseph Hinton. After the movant produces evidence
entitling it to summary judgment, the burden shifts to the nonmovant to present evidence
that raises a fact issue to defeat the motion. Phan Son Van v. Pena, 990 S.W.2d 751, 753
(Tex. 1999). Yarbrough presented no evidence. 

 On appeal Yarbrough brings forward the following arguments: the determination
of negligence is typically a fact question for the jury; the testimony submitted by Turner
as summary judgment proof does not rise to the level where reasonable minds could draw
only one conclusion regarding Turner's negligence; the testimony is conclusory and
insufficient to support summary judgment; under Daubert and Havner, (2)
 the testimony of
the expert witnesses is "not so [merely] because an expert says it is so"; and the jury can
rely on the testimony of the drivers themselves and needs no assistance from the two
experts or the officer.

 In the context of this case, Yarbrough pleaded contributory negligence as an
affirmative defense, but offered no summary judgment evidence in support of that defense
when Turner sought summary judgment on the issue based on summary judgment proof. 
Yarbrough's mere pleading of contributory negligence is not sufficient by itself to
withstand summary judgment proof to the contrary. See Brownlee v. Brownlee, 665
S.W.2d 111, 112 (Tex. 1984); see also Seale v. Nichols, 505 S.W.2d 251, 254 (Tex.
1974). Here, Yarbrough offered no evidence that Turner was negligent, and Turner
offered uncontroverted testimony that he (Turner) was not negligent. 

 On appeal, Yarbrough raises Daubert and Havner objections to the witnesses'
testimony, but those objections are too late. The qualifications of experts and the
reliability of their theories and methodology must be raised at the trial court level, and
failure to do so waives any error on those grounds. See generally Maritime Overseas
Corp. v. Ellis, 971 S.W.2d 402, 409-411 (Tex. 1998). Yarbrough is also incorrect in
stating that the expert testimony is of no weight. Accident reconstruction testimony and
the testimony of an officer who investigated the accident can be probative evidence of fault
or lack of fault. See generally Sciarrilla v. Osborne, 946 S.W.2d 919, 920-23 (Tex. App.--Beaumont 1997, pet. denied). 

 We turn next to Yarbrough's argument that the testimony offered as summary
judgment proof is conclusory and insufficient to support the trial court's judgment.
Although Yarbrough did not raise the conclusory nature of the deposition excerpts in its
response to Turner's motion for summary judgment, a legal conclusion unsupported by the
evidence is a defect in substance and generally no objection below is necessary to preserve
this type of error. See Hou-Tex, Inc. v. Landmark Graphics, 26 S.W.3d 103, 112 (Tex.
App.--Houston [14th Dist.] 2000, no pet.). Generally, legal conclusions unsupported by
facts will not support a summary judgment. See Anderson v. Snider, 808 S.W.2d 54, 55
(Tex. 1991). 

 We agree with Yarbrough that the deposition excerpt from Joseph Hinton appears
largely a conclusion as presented to the trial court. Hinton indicated he placed no fault on
Turner. He based his report on his presumption that Turner was going 65 miles per hour
(the speed limit for that stretch of road), although he thought he remembered that Turner
told him he (Turner) had been going 55 miles per hour. The motion for summary
judgment does not contain or incorporate any other portions of his deposition testimony
that may well have explained sufficiently the factual bases for his testimony. We agree the
one-page excerpt setting out Hinton's opinion of "no fault" is abbreviated and conclusory. 
 Although Nalle's testimony is also somewhat conclusory, this witness was
designated as an expert by Yarbrough. A conclusion by an expert witness hired by an
adverse party is similar to an admission by a party opponent. See generally Tex. R. Evid.
801(e)(2). Based on his designation by Yarbrough as an expert witness and the tenor of
the deposition questions submitted to him, Nalle was specifically authorized to speak on
behalf of Yarbrough about the fault of the parties. We hold that a conclusion of an expert
witness hired by an opposing party to speak on the subject matter on behalf of the party
opponent is admissible against the party opponent, and the conclusion may be relied on in
a motion for summary judgment even if the opposing expert witness does not disclose the
bases for the conclusion adverse to the expert's client. Nalle testified that "on the surface"
he could place no responsibility on Turner and that he saw no evidence of excessive speed. 
He also indicated he did not view the skid marks personally and relied on photographs he
had been given; Nalle indicated his analysis of the skid marks was very limited. If any
evidence existed of Turner's negligence, the expert witness hired by Yarbrough to
investigate the accident and present evidence of Yarbrough's defense surely would be
expected to present that evidence. As we have noted, no rebuttal evidence was presented
by Yarbrough in response to the motion for summary judgment,which was based in part
on Yarbrough's own expert's conclusion.

 Gillespie, the officer who prepared the accident reports, described her investigation
of the accident as follows. 

 Q. [Attorney]: In general terms, what did [Turner] tell you?


 A. [Gillespie]: He was traveling down the highway and Ms. Stanley was in
the van. She pulled out in front of him, and he had no time to stop.

 . . . .


 [Turner] had been southbound on 326 and just didn't see her until it
was too late. He tried to swerve, she tried to swerve, and they did
somewhat a sideswipe-type motion. 


 Q. Did you see any indication that Mr. Turner was exceeding the speed
limit?


 A. No.


 Q. Did you see anything in your investigation that would have led you to
believe or come to the opinion that Mr. Turner violated the law or unsafe --
or violated some type of safety rules or regulations? 


 A. Well, not in his driving or the actual accident. He was in violation of
not having insurance on that truck. 


 Q. That surely didn't have anything to do with the accident.


 A. Right. But as far as reckless driving, anything of that nature, no, sir,
there was no indication that there had been anything other than him traveling
south on 326. 


 Q. Did you speak with John Snider, the driver of the dump truck?


 A. The day of the accident, my partner and Trooper Odom spoke with him;
and then I had spoke to him on the phone after that.


 Q. What did John Snider say to you during your investigation?


 A. He had stopped at the little convenience store that sits on the corner of
Hob Warren and 326. He had pulled his truck up facing the wrong
direction, but he had been a little distance from the actual intersection. He
had witnessed the accident. 


Gillespie had a factual basis for her opinion that Turner was not driving recklessly. She
investigated the accident, spoke with troopers who had been at the scene, talked to John
Snider (the Yarbrough driver) on the phone, and also interviewed Turner. Based on her
investigation, she stated she saw nothing that would indicate Turner violated the law or
safety rules or regulations, other than failing to have insurance on the truck. Because her
opinion regarding Turner's lack of negligence has a factual basis, and since a sufficiently
detailed excerpt, reflecting that factual underpinning, was submitted as summary judgment
proof, we conclude Gillespie's opinion, as evidenced in the deposition excerpt, is not
conclusory and is competent summary judgment proof. 

 After Turner's motion for summary judgment was filed, but before the trial court
heard and granted the motion, Yarbrough filed an amended answer, pleading Turner's
contributory negligence. Yarbrough specifically pleaded that Turner had reported to work
on the day of the accident under the influence of a controlled substance and that the
violation and conduct were negligence per se and a proximate cause of the accident. 
However, he produced no evidence to support this pleading, nor does he contend on appeal
there exists any such evidence. 

 Based on the evidence produced by Turner, we find he established as a matter of
law he was not negligent. Although Yarbrough pleaded Turner's negligence as an
affirmative defense, the "[m]ere pleading of the defense is not sufficient to withstand a
properly evidenced motion for summary judgment." Seale, 505 S.W.2d at 254. After
Turner negated one element of the defense, Yarbrough did not produce any summary
judgment evidence raising a fact issue on the elements of the defense on which it had the
burden of proof. Consequently, we conclude the trial court did not err in granting partial
summary judgment on the defense of contributory negligence.



 Issue Preclusion


 Turner claims that as a result of the judgment rendered in the earlier Stanley v.
Snider case, Yarbrough's Dirt Pit is collaterally estopped, or precluded, in this case from
denying that Yarbrough's negligence proximately caused the accident. On appeal,
Yarbrough contends the trial court erred in granting summary judgment on collateral
estoppel grounds. 

 The Texas Supreme Court has held that collateral estoppel, or issue preclusion,
applies when "an issue decided in the first action is actually litigated, essential to the prior
judgment, and identical to an issue in a pending action" and when the party against whom
it is asserted had a full and fair opportunity to litigate the issue in the first suit. Texas
Dep't of Pub. Safety v. Petta, 44 S.W.3d 575, 579 (Tex. 2001). Collateral estoppel can
be applied offensively or defensively. A plaintiff uses offensive collateral estoppel when
he seeks to estop a defendant from relitigating an issue that the defendant previously
litigated and lost in a suit involving another party. See Johnston v. American Med. Int'l.,
36 S.W.3d 572, 577 (Tex. App.--Tyler 2000, pet. denied). In contrast, in the defensive
collateral estoppel context, a defendant seeks to prevent a plaintiff from relitigating an
issue that the plaintiff previously litigated and lost against another defendant. Id. In the
instant case, the motion for partial summary judgment granted by the trial court set out
offensive collateral estoppel as one of its grounds.

 Yarbrough acknowledges that both the United States Supreme Court and the Texas
Supreme Court have allowed offensive collateral estoppel, sometimes referred to as
offensive issue preclusion. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331, 99
S.Ct. 645, 58 L.Ed.2d 552 (1979); Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1, 5-7
(Tex. 1986). The Texas Supreme Court has directed Texas courts to use "the fairness
factors as outlined in Parklane Hosiery" in determining the applicability of the issue
preclusion doctrine. Id at 7. As a preliminary matter, we note the trial court is given
broad discretion in deciding the fairness of imposing issue preclusion. See Parklane
Hosiery, 439 U.S. at 331. In Parklane Hosiery, the United States Supreme Court set out
two general factors we consider here that may tend to weigh against the offensive use of
issue preclusion in a given case. First, the offensive use of issue preclusion does not serve
to promote judicial economy in the same manner as does the defensive use, because its use
tends to increase rather than decrease the total amount of litigation. Id., 439 U.S. at 329-330. Second, the offensive use of issue preclusion may be unfair under the circumstances
of a particular case. Id.

 We look first at the judicial economy factor. As Parklane Hoisery points out,
potential plaintiffs have everything to gain and nothing to lose by not intervening in the
first action. Id. Yarbrough sees the first factor as weighing against the offensive use of
issue preclusion here. In the offensive use context, the plaintiff (Turner) in the second
action has every incentive to adopt a "wait and see" attitude in the hope that the first action
by another plaintiff (Stanley) will result in a favorable judgment that the plaintiff (Turner)
can then use against the defendant (Yarbrough) in the second suit. See id. 439 U.S. at
330. Such a circumstance may result in multiplicity of suits and would not promote
judicial economy. (3) 

 Denying preclusion to a "wait and see" plaintiff is intended to discourage the
practice, but whether the denial of preclusion has that effect is questionable -- because the
penalty for the second plaintiff's failure to join in the first lawsuit is simply that the second
plaintiff is required to try its case. Yarbrough points out that Turner could have sought
consolidation of the two causes of action or, alternatively, intervened in Stanley's suit and
thereby avoided a multiplicity of suits. That is true. But it is equally true that similar
procedural vehicles were available to Yarbrough, that could have brought Turner into the
Stanley v. Snider suit; Yarbrough could thereby have sought to establish Turner was
negligent and responsible, at least in part, for the accident. See Tex. Civ. Prac. & Rem.
Code Ann. §§ 33.003, 33.004 (Vernon 1997). For whatever reason, neither party did
so. Having the opportunity to join Turner in the suit and making no attempt to do so,
Yarbrough's complaint now that judicial economy is not served by the use of offensive
issue preclusion lacks persuasive appeal. We note that this is not a case involving
numerous claimants, numerous defendants, or diverse factual circumstances; here we have
one accident and two injured drivers. When a party under these circumstances can and
does not attempt to join an ostensibly "wait and see" party, we see little reason to deny
the application of issue preclusion based on judicial economy given what appears to have
been the precluded party's own attitude to the economics of joinder. We do not believe
issue preclusion should be disallowed here on "judicial economy" grounds. 

 Yarbrough also contends that the application of issue preclusion is erroneous
because the jury in the Stanley v. Snider case did not find the company negligent. The
argument is technically arguable only in the sense that the jury charge in the prior suit
asked if Yarbrough's employee Snider was negligent, not whether Yarbrough was
negligent. However, the judgment in the prior case recites that Snider "is the employee
of [Yarbrough] and was working in the course and scope of his employment at the time of
the accident that gives rise to this judgment." The claim in Snider, that Snider was
negligent in parking his truck in a place where it blocked Stanley's view of Turner, is the
exact claim Turner makes here. With such a judgment against it, Yarbrough is vicariously
liable for its employee's torts. See generally Baptist Mem'l Hosp. Sys. v. Sampson, 969
S.W.2d 945, 947 (Tex. 1998). Furthermore, the trial court rendered judgment against
both Snider and Yarbrough in the prior case, and the judgment recites that Snider and
Yarbrough are jointly and severably liable for the damages. We find no merit in
Yarbrough's argument; it is vicariously liable for its employee's negligence committed in
the course and scope of his employment. The issue determined by the jury in the Stanley
case is exactly the issue it is precluded from relitigating here. 

 Yarbrough also raises the issue of the uncertainty surrounding the pending appeal
in the Stanley suit. As noted herein, the preliminary appeal in the first suit has been
concluded; this court has affirmed the judgment of the trial court. See Stanley, 44 S.W.3d
718. Yarbrough filed a petition for review in the Texas Supreme Court in the Stanley
case, and that petition has now been denied. Furthermore, the Texas Supreme Court has
held that the pendency of an appeal does not prevent a judgment from having preclusive
effect, unless what is called an appeal actually consists of a trial de novo. See Scurlock,
724 S.W.2d at 6. Of course, if the Texas Supreme Court had reversed the Stanley case,
Yarbrough would not have been precluded in this case from contesting its negligence
again. To avoid the possibility that this judgment would become final before the Stanley
appeal was resolved, we would have entered a stay order in this case. However, the
Stanley appeal has now been concluded adversely to Yarbrough. No uncertainty exists
concerning the Stanley judgment. 

 Yarbrough next urges that the second consideration raised in Parklane Hosiery --
the potential unfairness of the application of offensive use of issue preclusion --
demonstrates the trial court erred in applying it in this case. The company urges issue
preclusion is unfair because the second action (Turner's suit) affords the defendant
(Yarbrough) procedural opportunities not available in the first action (Stanley's) that could
readily cause a different result. Parklane Hosiery, 439 U.S. at 330-331. In support of
that contention, Yarbrough again points out that Turner could have sought consolidation
of the two causes of action or, alternatively, intervened in Stanley's suit. As noted above,
Yarbrough had similar procedural vehicles available to it, but for whatever reason chose
not to employ them. 

 Under the "unfairness" factor, Yarbrough also points out that the testimony of its
expert, Nalle, is available in the instant trial and was excluded at the first trial. We find
no merit in this claim. The trial court excluded Nalle's testimony during the Stanley trial,
because he was not timely designated. See Stanley v. Snider, 44 S.W.3d 717-18. Issue
preclusion will not be disallowed when the very reason Yarbrough has a procedural
opportunity available to it in the second action (that was not available in the first action)
is because it failed to abide by the rules of civil procedure in the first action. We do not
believe that issue preclusion can "be avoided by offering in admissible form evidence that
was excluded from the first action." See 18 Charles Alan Wright et al., Federal 
Practice and Procedure § 4416, at 141 (1981). Furthermore, because we are
concerned with the issue of fairness, we note that Yarbrough did not seek to use any
testimony from Nalle to oppose the summary judgment and does not suggest why it failed
to do so. 

 Finally, Yarbrough appears to claim there can be no preclusion on the issue of
whether Yarbrough's negligence caused Turner's injuries, because the jury in the prior
case found Snider, Yarbrough's employee, proximately caused Stanley's injuries. What
Yarbrough appears to be claiming is that a jury finding that Snider caused Stanley's
injuries does not have a preclusive effect on whether Yarbrough caused Turner's injuries. 
According to Yarbrough, the record "is completely void" of evidence that Turner's
injuries were proximately caused by Yarbrough's negligence. We find no merit in this
argument. Based on their review of the facts arising out of the same accident at issue in
this case, the jury in the earlier case found both Snider and Stanley negligent and
apportioned fault at 51% and 49% respectively. The negligence of the parties involved in
the accident was established by the prior suit. Turner was injured in the accident; the
parties in the instant suit (Turner and Yarbrough) stipulated to damages incurred by Turner
as a result of the accident. The cause of the accident having already been established in
the prior suit, and the amount of Turner's damages having been stipulated to in the instant
suit, we find no merit to Yarbrough's argument. 

 We overrule Yarbrough's issues and affirm the judgment. 

 AFFIRMED.

 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on August 15, 2001

Opinion Delivered November 15, 2001

Publish


Before Walker, C.J., Burgess and Gaultney, JJ.
1. No one disputes Yarbrough's statement in its brief that Stanley was a settling
tortfeasor, and we accept it as true. See Tex. R. App. P. 38.1(f).
2. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593-95, 113 S.Ct. 2786,
125 L.Ed.2d 469 (1993) (finding that, in determining the reliability of scientific testimony,
a number of factors bear on the inquiry including: (1) whether the theory or technique can
be or has been tested, (2) whether the theory or technique has been subjected to peer
review or publication, (3) the known or potential rate of error, and (4) general acceptance
within the relevant scientific community); see also Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex.1997). 

 



3. The Restatement (Second) of Judgments § 29 (1982), which Texas courts have
cited with approval, presents the concept of judicial economy as one of the circumstances
that should be considered in determining whether to apply the doctrine of collateral
estoppel. See Tankersley v. Durish, 855 S.W.2d 241, 245, 247 (Tex. App.--Austin 1993,
writ denied); Trapnell v. Sysco Food Servs., Inc., 850 S.W.2d 529, 536-37, 540 (Tex.
App.--Corpus Christ 1992), aff'd, 890 S.W.2d 796, 801 (Tex. 1994).