Robert N. GOLDSTEIN, Appellant,

v.

The COMMISSION FOR LAWYER DISCIPLINE, Appellee.

No. 05–02–00833–CV.

Court of Appeals of Texas, Dallas.

June 25, 2003.

Rehearing Overruled July 29, 2003.

Henry J. Ackels, Ackels & Ackels, L.L.P., Dallas, Sidney Ravkind, The Ravkind Firm, Houston, for Appellant.

Luther G. Jones III, State Bar Of Texas, Dallas, Linda A. Acevedo, Office of the Chief Disciplinary Counsel, State Bar Of Texas, Austin, for Appellee.

Before Justices JAMES, O'NEILL, and FRANCIS.

## OPINION

Opinion by Justice O'NEILL.

Appellant Robert N. Goldstein appeals the trial court's judgment of disbarment. In ten issues, Goldstein generally contends: (1) the trial court erred in granting a partial summary judgment that he was collaterally estopped from challenging prior findings in a legal malpractice case, (2) the trial court erred in concluding he committed a violation of the Disciplinary Rules, (3) disbarment was not an appropriate sanction in this case, and (4) the trial court erred in ordering him to pay attorney fees. For the following reasons, we affirm the trial court's judgment.

In January 1997, Lynne Ryan Ginsburg retained Goldstein to represent her in her divorce. Ginsburg and Goldstein entered into a fee contract establishing an hourly rate of $225, with a possible increase to $300 per hour if Goldstein devoted all of his time to the case. Ginsburg and her husband subsequently reached a settlement agreement in which she would receive property valued at approximately $50 million from a marital estate estimated to be worth about $200 million. Goldstein represented to the family court his fee was $300,000. Later that year, Ginsburg delivered 100,000 shares of stock to Goldstein valued at $4.8 million. Goldstein accepted the stock and recorded the payment on his records as a "gift." Ginsburg later sued Goldstein alleging the stock was delivered to Goldstein to satisfy their prior oral agreement that she pay him a contingency fee. Ginsburg alleged the agreement violated the Texas Disciplinary Rules of Professional Conduct and was thus voidable. Ginsburg also alleged that Goldstein failed to conduct adequate discovery, did not adequately represent her, violated his fiduciary duties, and converted the $4.8 million in stock. Ginsburg sought as damages return of the $4.8 million fee as well as actual and exemplary damages.

Numerous witnesses testified and hundreds of exhibits were introduced during a one-month jury trial. After the trial, the trial court directed a verdict in favor of Ginsburg that the $4.8 million payment was an unconscionable contingency fee that was not in writing. However, the trial court also allowed Goldstein to submit the issue to the jury of whether the $4.8 million was a fair gift or bonus and made

its directed verdict subject to the jury's finding that the payment was not such a fair gift or bonus.[1] Because of the jury's failure to find the $4.8 million was a fair gift or bonus, and because of the directed verdict, the trial court ordered Goldstein to repay the stock to Ginsburg.

The Commission for Lawyer Discipline (the Commission) subsequently brought this disciplinary proceeding against Goldstein based in part on his receiving $4.8 million from Ginsburg. The Commission filed a motion for partial summary judgment asserting Goldstein was collaterally estopped from relitigating whether the $4.8 million payment (1) was a fair gift or bonus, (2) was a contingency fee, (3) was not in writing, and (4) was unconscionable. The trial court granted the Commission's motion for partial summary judgment.

At trial, the Commission presented evidence of other ethical violations. In its findings of fact and conclusions of law, the trial court stated that it had granted a partial summary judgment that Goldstein was collaterally estopped from relitigating whether the $4.8 million payment was a contingency fee. In doing so, the court noted contingency fees in divorce cases raise *per se* ethical concerns and recited the following portion of comment 9 to rule 1.04:

> Contingent and percentage fees in family law matters may tend to promote divorce and may be inconsistent with a lawyer's obligation to encourage reconciliation. Such fee arrangements also may tend to create a conflict of interest between lawyer and client regarding the appraisal of assets obtained for the client.... Because of the human relationships involved and the unique character of the proceedings, contingent fee

arrangements in domestic relations cases are rarely justified.

The trial court further found that Goldstein's use of the contingency fee in the divorce case was not justified and that its receipt violated rule 1.04(a) of the Disciplinary Rules of Professional Conduct prohibiting an attorney from charging an unconscionable fee. *See* Tex. Disciplinary R. Prof'l Conduct 1.04(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9). The trial court also found Goldstein committed numerous other ethical violations and concluded Goldstein should be disbarred. This appeal followed.

Collateral Estoppel

In his first, fifth, seventh, and eighth issues, Goldstein contends the trial court erred in granting the Commission's motion for partial summary judgment based on collateral estoppel. In seeking to invoke the doctrine of collateral estoppel, a party must establish three elements: (1) the facts sought to be litigated in the second action were fully and fairly litigated, (2) those facts were essential to the judgment in the prior action, (3) the issue is identical to an issue in the prior action. *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex.2001). When collateral estoppel is being used offensively, as here, the plaintiff uses the doctrine to estop a defendant from relitigating an issue that the defendant litigated and lost in prior litigation with another party. *Yarbrough's Dirt Pit, Inc. v. Turner*, 65 S.W.3d 210, 216 (Tex.App.-Beaumont 2001, no pet.).

A trial court has broad discretion in determining whether to allow a plaintiff to use collateral estoppel offensively. *Parklane Hosiery Co. v. Shore*, 439 U.S.

---

1. It is unclear upon what theory of law this   issue was submitted to the jury.

322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *see also Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 7 (Tex.1986) (citing *Parklane Hosiery* with approval). A trial court abuses its discretion only when its action is arbitrary and unreasonable, without reference to guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991).

In determining whether to apply collateral estoppel offensively, the trial court must consider the *Parklane Hosiery* factors. *See Parklane Hosiery Co.*, 439 U.S. at 329–30, 99 S.Ct. 645; *Yarbrough's Dirt Pit*, 65 S.W.3d at 216. The first factor is whether application of the doctrine will tend to increase litigation by allowing a plaintiff to "wait and see" before filing suit instead of joining in the prior litigation. *See Parklane Hosiery*, 439 U.S. at 329–330, 99 S.Ct. 645; *see also Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 858 (Tex.App.-San Antonio 1997, pet. denied). Second, the offensive use of collateral estoppel may be unfair under the circumstances of a particular case. Under this factor, we consider the defendant's incentive in the first action to vigorously defend the suit, the foreseeability of future suits, and the availability of procedural safeguards in the second suit that were not available in the first suit. *See Parklane Hosiery*, 439 U.S. at 330, 99 S.Ct. 645.

Applying the *Parklane Hosiery* factors to this case, we cannot conclude the trial court abused its discretion by giving collateral estoppel effect to findings in the prior malpractice suit. With respect to the first factor, the Commission could not have sought Goldstein's disbarment in the malpractice action. Therefore, application of the doctrine did not tend to increase litigation. *See Parklane Hosiery*, 439 U.S. at 332, 99 S.Ct. 645 (holding plaintiff's probable inability to intervene in action brought by the Securities and Exchange Commis-

sion did not justify refusal to apply collateral estoppel offensively). With respect to the other fairness factors, in the prior malpractice action, Goldstein stood to lose $4.8 million if Ginsburg showed it constituted an unconscionable contingency fee that was not in writing. The trial court in the instant action could clearly conclude $4.8 million was more than adequate incentive for Goldstein to vigorously defend the action. Moreover, we conclude it was foreseeable that Goldstein would be subject to a future suit by the Commission based upon the allegations in Ginsburg's suit. Finally, Goldstein has not directed us to any procedural safeguards that he was deprived of in the malpractice action that he would have been entitled to in the disciplinary action. We conclude, considering all of the *Parklane Hosiery* factors, the trial court did not abuse its discretion in allowing the Commission to use collateral estoppel offensively in this case.

In reaching this conclusion, we reject Goldstein's reliance on *Neely v. Commission for Lawyer Discipline*, 976 S.W.2d 824, 827–29 (Tex.App.-Houston [1st Dist.] 1998, no pet.). In that case, the Commission brought a disciplinary action against an attorney who had been sanctioned under Texas Rule of Civil Procedure 13 for filing groundless pleadings in prior litigation. The Houston First Court of Appeals concluded that applying collateral estoppel to findings that were made following the hearing was not justified. The court relied on the differences in (1) the nature of the proceeding, (2) the issues to be considered by the two courts, and (3) the different consequences involved. *Id.* at 827. The court also noted that an attorney in a rule 13 sanctions hearing does not have a right to a trial by jury. *Id.* at 827–28. Finally, the court concluded collateral estoppel should not be applied because the trial courts in the two actions consider different

factors in determining appropriate sanctions.

After reviewing the facts of this case, we conclude *Neely* is distinguishable. The findings that resulted from the prior malpractice action were not the result of a mere hearing following a motion. To the contrary, Goldstein had a full and lengthy trial with all the safeguards associated with such and had more than an adequate opportunity to litigate whether he violated the disciplinary rules. Additionally, unlike the attorney in the *Neely* case who faced a $64,600 sanction, Goldstein faced a $4.8 million judgment if Ginsburg proved her allegations. Finally, Goldstein had the benefit of a jury trial in the malpractice case. Consequently, *Neely* is distinguishable.

In reaching this conclusion, we recognize that, in declining to give preclusive effect to findings from the rule 13 sanctions hearing, the *Neely* court placed great emphasis on the fact that a trial court in a rule 13 sanctions case considers different factors in determining appropriate sanctions than a trial court in a disciplinary action. However, applying collateral estoppel to a finding made in prior litigation that a disciplinary violation *occurred* does not limit a trial court in a subsequent disciplinary proceeding from then considering the appropriate factors when considering *what sanction* to impose based on that violation. The *Neely* court also placed emphasis on the fact that an attorney in a rule 13 sanctions case does not face suspension or disbarment. However, the possible consequences a lawyer may face is relevant only to the extent it suggests a lack of incentive to defend. And as noted above, because Goldstein had a more than adequate incentive to defend the malpractice case, we cannot conclude the trial court abused its discretion in applying the doctrine even if the possible consequences to an attorney are not identical.

Goldstein also asserts collateral estoppel was improperly used in this case because the factual determinations made in the malpractice case were not the same as those presented in the disbarment case. Goldstein's argument under this point presumes the trial court in the malpractice suit found the fee was an unconscionable contingency fee based solely on the jury's failure to find the payment was not a "fair gift or bonus." According to Goldstein, this was improper because in the malpractice suit, he was given the burden to prove the payment was a fair gift or bonus. He asserts the jury's failure to find in his favor on this issue cannot be converted into an affirmative finding that the fee was a contingency fee, was not in writing, and was unconscionable. While we do not disagree with Goldstein's premise, we do disagree with his interpretation of the findings in this case. Specifically, Goldstein ignores the trial court's *independent* findings regarding the fee. In those findings, the trial court expressly stated that it withdrew from the jury the issue of whether the fee was a contingency and directed a verdict that the fee was a contingency fee, that it was not in writing, and that it was *unconscionable*. The trial court ordered Goldstein to repay Ginsburg over $4.8 million based specifically on its own affirmative finding, not merely because of the jury's failure to find the payment was a fair gift or bonus. Therefore, Goldstein's argument is without merit.

Goldstein also contends the trial court, in both the malpractice case and the instant case, erred in concluding the fee was unconscionable based solely on the fact he received a contingency fee in a divorce case. With respect to the malpractice case, appellant is attempting to relitigate the finding of unconscionability, which is

precisely what the doctrine of collateral estoppel precludes him from doing. Moreover, appellant has not directed us to any evidence showing the trial court in the malpractice case found the fee was unconscionable based solely on the fact he received the contingency fee in a divorce case. Goldstein also complains the trial court in the instant action found the fee unconscionable only because he received the fee in a divorce case. To support his contention, Goldstein relies on the trial court's reference to comment 9 to rule 1.04 in its findings of fact and conclusions of law. Goldstein has at most shown the trial court considered the concerns outlined in the comments to the rules in determining whether he violated the rules. Goldstein has not directed this Court to any authority for the proposition that the trial court erred in doing so. In any event, the finding of unconscionability was fully and fairly litigated in the prior proceeding and is now final.

Goldstein next asserts that the trial court erred in giving collateral estoppel effect to the prior judgment because after judgment, he and Ginsburg entered into a settlement agreement that rendered the prior judgment moot. However, Goldstein has directed us to no evidence the prior judgment was ever set aside. Therefore, he has not shown the trial court erred in applying collateral estoppel for this reason. We resolve the first, fifth, seventh, and eighth issues against Goldstein.

In his second issue, Goldstein contends he was deprived of a fair trial by the Commission's failure to produce the sworn and inconsistent statement made by its primary and, indeed, only witness. In his third issue, Goldstein contends he did not knowingly waive his right to a jury trial. In his sixth issue, Goldstein contends he was not required to withdraw from representing Ginsburg when Ginsburg refused to follow his advice. Goldstein provides no meaningful argument and cites no authority to support his contentions under these issues. Consequently, they are inadequately briefed and present nothing to review. *See* TEX.R.APP. P. 33.1(h); *Dolenz v. The State Bar of Tex.*, 72 S.W.3d 385, 388 (Tex.App.-Dallas 2001, no pet.). We resolve the second, third, and sixth issues against Goldstein.

## EXPERT TESTIMONY

■ In his fourth issue, Goldstein contends expert testimony was necessary to establish violations of the disciplinary rules. We agree with the El Paso Court of Appeals that interpretation of the disciplinary rules is a question of law for the trial court, and therefore expert testimony is not required. *See Hawkins v. Com'n for Lawyer Discipline*, 988 S.W.2d 927, 936 (Tex.App.-El Paso 1999, pet. denied). We resolve the fourth issue against Goldstein.

## ATTORNEY FEES

■ In the tenth issue, Goldstein contends the trial court erred in awarding attorney fees to the Commission. According to Goldstein, a trial court is not permitted to award attorney fees as a sanction if it also orders disbarment as a sanction. We disagree. Rule 1.06(T) of the Texas Rules of Disciplinary Procedure specifically provides that attorney fees may be included as part of "sanctions." *See* TEX.R. DISCIPLINARY P. 1.06(T), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon 1998). We resolve the tenth issue against Goldstein.

Our resolution of this appeal makes it unnecessary for us to consider Goldstein's ninth issue in which he contends we should remand to the trial court in the event we determine he committed some, but not all,

of the violations. Therefore, we resolve the ninth issue against Goldstein.

We affirm the trial court's judgment.

JAMES, J., dissenting.

Dissenting Opinion by Justice JAMES.

The majority's opinion today paves the road for the State Bar to discipline attorneys based on determinations in private malpractice actions in tort. Attorneys will not only need to consider defending the suit before them when a former client brings them into civil court, but they must simultaneously defend that allegation as if facing probation, suspension, resignation, or even disbarment from their chosen profession. However, I conclude the facts before us do not withstand a fairness assessment in reviewing the court's application of offensive collateral estoppel. Accordingly, I would resolve issue one in Goldstein's favor, and I respectfully dissent.

### COLLATERAL ESTOPPEL

This case involves the offensive use of collateral estoppel, and the majority identified the applicable standard of review: "abuse of discretion." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *see also Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 7 (Tex.1986) (citing *Parklane Hosiery* with approval). While I agree with the majority's application of the first *Parklane Hosiery* factor considering judicial economy, I disagree with the conclusion the majority reaches in applying the second *Parklane Hosiery* factor, that involving fairness.

In addressing the *Parklane Hosiery* fairness factors, the majority concludes the trial court did not abuse its discretion in applying collateral estoppel for three reasons. First, the majority contends Goldstein had adequate incentive to vigorously defend the malpractice action. Second, the disciplinary action was foreseeable because of the allegations in Ginsburg's suit. And third, the majority states Goldstein has not directed the Court to any procedural safeguards he was deprived of in the malpractice action. I disagree with both the majority's conclusion and its reasons upon which it bases the conclusion.

In determining if the application of offensive collateral estoppel was unfair to Goldstein, we should go beyond *Parklane Hosiery* and incorporate a fairness assessment similar to that used in *Neely. See Neely v. Com'n for Lawyer Discipline,* 976 S.W.2d 824, 827 (Tex.App.-Houston [1st Dist.] 1998, no pet.). As part of this fairness assessment, to determine if offensive collateral estoppel was appropriately applied in this case, we need to look at the nature of the proceedings, the issues considered in each, and the consequences faced in each proceeding. *Id.* Although the majority distinguishes *Neely* based on the facts in the case before us and those in *Neely,* the application of offensive collateral estoppel in the present case should be due the same fairness assessment. *Id.* In distinguishing *Neely,* the majority cites no authority supporting its determination. Because I disagree with the majority's conclusion when applying this fairness assessment, and because I reach a different conclusion, I dissent from the majority's opinion.

### Nature and Consequences of Proceedings

A disciplinary proceeding is brought by the Commission solely for the purpose of maintaining appropriate standards of professional conduct within the profession. *See* Tex.R. Disciplinary P. preamble, 1.02, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A–1 (Vernon Supp.2003); *see also Two Thirty Nine Joint Venture v. Joe,* 60 S.W.3d 896, 924 (Tex.App.-Dallas 2001, pet. granted) (FitzGerald, J., dissent-

ing) (quoting 1 J. HADLEY EDGAR, JR. & JAMES B. SALES, TEXAS TORTS AND REMEDIES § 12.02[1][a][ii][A] (2000)). In a disciplinary hearing, the considerations include the nature and degree of the misconduct; the seriousness of and circumstances surrounding the misconduct; the loss or damage to the client; the damage to the profession; the assurance that those who seek legal services in the future will be insulated from this type of misconduct; the profit to the attorney; the avoidance of repetition; the deterrent effect on others; the maintenance of respect for the legal profession; the conduct of the attorney during the course of the action; the trial of the case; and other relevant evidence concerning the attorney's personal and professional background. TEX.R. DISCIPLINARY P. 3.10(A)-(L). More importantly, a disciplinary action is quasi-criminal in nature. Distinguished from a disciplinary action, though, a suit in legal malpractice is a private action in tort. *See Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988). It involves a private claim, brought by a client who alleges damages resulting from an attorney's breach of duty. *See Peeler v. Hughes & Luce,* 868 S.W.2d 823, 827–28 (Tex.App.-Dallas 1993), *aff'd,* 909 S.W.2d 494 (Tex.1995).

The consequences of a disciplinary proceeding arising from professional misconduct may include disbarment, resignation in lieu of disbarment, suspension, probation of suspension, reprimand, restitution, and payment of attorneys' fees and costs. TEX.R. DISCIPLINARY P. 1.06(T). In a malpractice action, on the other hand, an attorney does not face the consequence of disbarment or even suspension. The consequences in a malpractice action are damages. Accordingly, an attorney is motivated by different concerns in a malpractice action than he is in a disciplinary proceeding. *See Neely,* 976 S.W.2d at 829.

In the malpractice case, Goldstein was sued by a former client. The disciplinary action, on the other hand, was brought by the permanent committee of the State Bar of Texas, which is the licensing agent of Texas attorneys. The majority states that because he faced losing $4.8 million, Goldstein had adequate incentive to vigorously defend the malpractice action. This seems to imply that the dollar amount an attorney faces losing in a judgment or sanctions should be a deciding factor in our determination. I disagree. Our personal value placed on a dollar amount is insufficient—standing alone—to determine if an attorney had adequate incentive to vigorously defend an action. The $4.8 million Goldstein faced as a possible judgment was sought because that is the amount Goldstein had received from his client; Goldstein faced only non-recurring economic damages in the suit by Ms. Ginsburg. However, when disciplinary proceedings were brought against him, he faced the loss of his ability to generate future income earned by practicing law. Facing consequences of losing an amount of money he had received in error is clearly different than facing the prospect of losing the ability to generate any future income.

### Comparison of the Issues

In continuing this fairness determination, we should compare the issues presented in each of the proceedings. As the majority states, collateral estoppel applies when a party against whom it is asserted had a full and fair opportunity to litigate the ultimate issue in the prior suit. *Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 579 (Tex.2001). "Ultimate issue," however, does not refer to a claim or cause of action; "[u]ltimate issues are those factual determinations *submitted to a jury* that are necessary to form the basis of a judgment." *Tarter v. Metro. Sav. & Loan*

*Ass'n,* 744 S.W.2d 926, 928 (Tex.1988) (emphasis added).

To assess this factor, we should ask whether the same ultimate issue litigated by Goldstein in the malpractice suit was used as the determinative issue presented in the Commissioner's disciplinary suit against Goldstein. The court identified its determinative issue as the finding that the property was a product of a contingent fee.[1] This finding was used to determine the violation of both rule 1.04(a) and rule 1.04(d).[2] The ultimate issue in the malpractice case, on the other hand, was whether the property constituted a "fair gift or bonus" because it was this particular factual determination *submitted to the jury* that the court used to form its judgment there was a contingent fee, not in writing, and Goldstein failed to provide his client an accounting of the proceeds and fee. *See Tarter,* 744 S.W.2d at 928. The property could have been determined not to be a "fair gift or bonus" without it comprising a contingent fee. Therefore, whether the property constituted a contingent fee or was not a "fair gift or bonus" are distinct issues.

The majority states, "Goldstein has not directed us to any procedural safeguards he was deprived of in the malpractice action that he would have been entitled to in the disciplinary action." The majority, however, reviews the procedural differences in distinguishing *Neely,* asserting that Goldstein had the benefit of a jury trial in the malpractice case; the sanction hearing in *Neely* was not before a jury. The majority paints with too broad a stroke, though, because I cannot conclude Goldstein actually reaped the benefit of a jury trial when considering the effect of collateral estoppel. The determination of the issue of whether the fee was a contingent fee in the malpractice action was not before the jury. The court determined the issue. It was not "submitted to a jury." *See Tarter,* 744 S.W.2d at 928. The majority cites no authority to support the independent finding of a contingent fee in the absence of the issue being submitted to a jury—in either the malpractice or the disciplinary proceeding.

In the disciplinary hearing, the court identified its finding that the property was the product of a contingent fee as the basis for its conclusion Goldstein violated rule 1.04(a). *See* Tex. Disciplinary R. Prof'l Conduct 1.04(a), (d), *reprinted in* Tex.

---

1. The court identified the finding that the fee was a contingent fee as its basis for finding Goldstein violated rule 1.04(a)—prohibiting an attorney from charging an illegal or unconscionable fee—because the mere use of a contingent fee in a divorce proceeding raised ethical concerns. I decline to address this issue as it is not necessary for my resolution of this appeal. *See* Tex. Disciplinary R. Prof'l Conduct 1.04(a). I instead address only whether the court erred in using collateral estoppel to determine whether the fee had been a contingent fee.

2. The relevant portions of rule 1.04 state:
   (a) A lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee. A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable.

   . . .

   (d) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (e) [prohibited in a criminal case] or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined.... Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement describing the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

   Tex. Disciplinary R. Prof'l Conduct 1.04(a), (d).

Gov't Code Ann., tit. 2, subtit. G app. A (Vernon Supp.2003) (Tex. State Bar R. art. X, § 9). Rule 1.04(a) prohibits an attorney from charging an illegal or unconscionable fee. Whether a fee was illegal or unconscionable presents distinct questions of fact. The court below identified the fact of contingency as the basis for its conclusion. Therefore, it appears the court decided the violation of rule 1.04(a) on the basis of fee illegality—not unconscionability. As I stated above, the issue of contingency is distinct from the issues considered in the malpractice case.

Finally, the majority also states the disciplinary action was foreseeable because of the allegations in Ms. Ginsburg's malpractice trial. However, even if the issues could be seen as the same in each suit, the determination of the issue in the malpractice trial is suspect. Goldstein raised to the trial court—and to this Court—his concern over the accuracy of the testimony in the malpractice case. During the disciplinary hearing, testimony revealed that Ms. Ginsburg had filed a new lawsuit against her ex-husband. The premise of that lawsuit calls the factual determinations reached in the malpractice trial into grave doubt because Ms. Ginsburg essentially recanted the allegations she made in her malpractice trial. I do not think we should ignore the implications her perjured testimony may have on the validity of the trial court's decision to proceed with its earlier-determined summary judgment invoking the doctrine of collateral estoppel from the malpractice trial. However, this is just what the majority does by not addressing the perjury allegation or its effect in analyzing the fairness issues. I likewise do not think we should determine whether a subsequent disciplinary action was foreseeable to the attorney-defendant if the issue is raised that the outcome of the malpractice case may have been based on perjured testimony.

CONCLUSION

Malpractice actions present a different nature of proceedings than a disciplinary action. *See Neely,* 976 S.W.2d at 827. The consequences an attorney faces in each action are strikingly different. Additionally, the determinative issue in the case below—contingency—was not the same as that fact issue presented for the jury to determine in the malpractice case. *See Tarter,* 744 S.W.2d at 928. Accordingly, the facts before us do not withstand a fairness assessment. *See Neely,* 976 S.W.2d at 827. Furthermore, the finding on which the trial court based collateral estoppel was shown to be based on suspect testimony. I would hold, therefore, that under the facts of this case, the trial court abused its discretion by incorrectly applying the doctrine of offensive collateral estoppel. *See Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991). Accordingly, I would resolve Goldstein's first issue in his favor as it applies to the court's findings that Goldstein violated rules 1.04(a) and 1.04(d). Furthermore, in determining offensive collateral estoppel was incorrectly applied, I would conclude there was no evidence Goldstein violated rules 1.04(a) or 1.04(d) before the court during the first phase of the trial—before sanctions.[3] Without any evidence before the trial court, I would conclude the Com-

---

3. During the trial, the court allowed testimony relating to the fees to be introduced during the first phase of the trial but noted it was a trial before the court. When the Commission objected to testimony on grounds the testimony went to the issues resolved by the collateral estoppel, the court stated it would "allow ... the questions on the sanction basis only." Later during the trial, the court further stated, "One final reminder, we are not litigating the prior findings with regard to the motion for partial summary judgment."

mission failed to prove Goldstein violated either rule 1.04(a) or 1.04(d). *See generally Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *Durban v. Guajardo*, 79 S.W.3d 198, 207 (Tex.App.-Dallas 2002, no pet.). Because of this resolution, I would not address Goldstein's fifth, seventh, or eighth issues; each of these complains of the findings involving the contingent fee.

Because I would resolve issue one in favor of Goldstein, I cannot assume the trial court would have imposed the same sanction had it known the contingency fee agreement violations were not before it pursuant to its partial summary judgment applying offensive collateral estoppel. Accordingly, I would vacate the trial court's judgment of disbarment and remand this case to reconsider the issue of sanctions.