IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-06-00397-CV

 

In re
Letha Williamson

 

 



Original Proceeding

 



MEMORANDUM  Opinion










 

          Letha Williamson, the wife of a
prisoner, requests this Court to mandamus the Limestone County Sheriff to
furnish copies of arrest or offense reports to her which were apparently
forwarded to the Court of Criminal Appeals.  Williamson also filed a motion for
leave to file her petition for writ of mandamus and a motion to proceed “in
forma pauperis.”[1]  

          We question whether Williamson has
standing to pursue this mandamus.  See Child World v. Solito, 780
S.W.2d 954, 955 (Tex. App.—Houston [14th Dist.] 1989, orig. proceeding) (One
maintaining a mandamus proceeding must show he has a justiciable interest in
the subject matter of the litigation.).  Nevertheless, because the Limestone
County Sheriff is not a judge of a district or county court in this court of
appeals district, and because the issuance of the writ Williamson seeks is not
necessary to enforce the jurisdiction of this Court in a case properly before
it, this Court lacks jurisdiction to grant the relief Williamson requests.  Tex. Gov't Code Ann. § 22.221(a), (b)
(Vernon 2004); Silva v. Klevenhagen, 833 S.W.2d 746, 747 (Tex.
App.—Houston [1st Dist.] 1992, orig. proceeding).

          Absent a specific exemption, the Clerk
of the Court must collect filing fees at the time a document is presented for
filing.  Tex. R. App. P. 12.1(b);
Appendix to Tex. R. App. P.,
Order Regarding Fees (July 21, 1998).  See also Tex. R. App. P. 5; 10th
Tex. App. (Waco) Loc. R. 5; Tex.
Gov’t Code Ann. § 51.207(b) (Vernon 2005).  Under these circumstances,
we suspend the rule and order the Clerk to write off all unpaid filing fees in
this case.  Tex. R. App. P. 2.  

          The petition for writ of mandamus is
dismissed for want of jurisdiction.  Williamson’s motion for leave to file her
petition is dismissed as moot.  Likewise, the motion to proceed without the
advance payment of cost is dismissed as moot.

 

 

                                                                   TOM
GRAY

                                                                   Chief
Justice

 

Before
Chief Justice Gray,

          Justice
Vance, and

          Justice
Reyna

Pet.
dismissed

Motions
dismissed

Opinion
delivered and filed December 20, 2006

[OT06]









[1]
The motion to proceed “in forma pauperis” was actually styled “James L.
Williamson, Relator v. Dennis Wilson, Sheriff Limestone County, Texas, Respondent” and was signed by James L. Williamson.  Letha Williamson signed the
motion as a “third party.”









the street.  Phillips positioned his unmarked Ford Explorer in a parking lot
across the street.  Other officers patrolled in unmarked vehicles in the
neighborhood.

          Phillips saw Brown and Haliburton
approaching in Haliburton’s Lincoln Town Car and radioed the other officers. 
According to Phillips, Brown pulled Haliburton’s car into the driveway.  At
that time, the two deputy marshals who remained on the premises approached the
car from each side with weapons drawn.  They identified themselves and ordered
Brown to get out of the car.  Phillips drove the Explorer across the street and
stopped it about one or two feet behind the car to prevent Brown from fleeing. 
Phillips opened the door and stepped out with one foot, drawing his gun at the
same time.

          Brown put the car in reverse and hit
the Explorer pushing it back “maybe a foot, two-foot, but the initial jar was
good.”  Phillips got back in the Explorer and put his foot on the brake, trying
to slow Brown.  Phillips debated whether he should push back and decided to
ease off the brake.  According to Phillips, once Brown “started pushing back the
second time in my vehicle, it basically just pushed me out of the way into the
street.”  The prosecutor then asked Phillips whether there was a second impact,
which Phillips said there was.

          At the point of the second impact, he
had cut his wheel all the way to the right so that his wheels were facing to
the right.  His vehicle came back hard and the side of his vehicle, the back
side of his vehicle—I basically just had a view of him coming down in a reverse
position dragging down the front of my vehicle, so I remember standing—sitting
there holding my gun pointed at him, and we were probably —we were closer than
you and I were because it was the front of my vehicle and his driver’s window
was right there . . . .

 

          Brown then fled from Phillips and the
other officers by driving down the street in reverse at a speed approaching
what Phillips estimated to be 45 miles per hour.  Phillips pursued him, and
officers in other vehicles blocked Brown’s escape route from behind.  Brown was
forced to stop at the end of the block where he was apprehended.

          Phillips explained that, when Brown
cut the wheel and the driver’s side of the Town Car collided with the front of
the Explorer, the passenger side of the Town Car went over the curb at the end
of the driveway on the side where the large bush was growing.

          Phillips testified that his knee was only
“a little sore” that day but hurt quite a bit more the next day.

          Deputy Marshal Chris Casson was the
officer who positioned himself beside the driveway behind the bush.  He testified,
consistent with Phillips, that as Brown pulled into Haliburton’s driveway he
and the other deputy marshal approached each side of the car.  They each
identified themselves as “Police, U.S. Marshal,” drew their weapons, and
ordered Brown out of the car.  Casson testified that Phillips pulled into the
driveway behind Brown with the Explorer “halfway parked in the driveway,
halfway out in the street.”

          Texas Ranger Matt Cawthon also participated
in Brown’s apprehension.  He did not see the encounter at Haliburton’s
driveway.  On cross-examination, Cawthon examined a picture of the rear of the
Town Car and described how the picture depicts slight damage on the rear bumper
near the license plate, which he characterized as “nothing significant.”

          Waco Police Officer Ryan Holt was also
involved in the investigation of the circumstances surrounding Brown’s
apprehension.  He too did not see the encounter at Haliburton’s driveway.  Holt
prepared an accident report that day regarding the collision between the Town
Car and the Explorer.  In this report, Holt noted Phillips’s statements that
there were two “rammings” by Brown at the driveway and that he was “not
injured.”

          Haliburton testified for the defense. 
According to her, Brown was not able to pull into the driveway because someone
rammed the driver’s side of the Town Car with a “red Ford Escort” just as Brown
was about to pull in.  However, the State impeached Haliburton with a statement
she had made to Phillips on the date of the occurrence in which she told him
that Brown “put the car in reverse and slammed into the Explorer.”

          Haliburton’s daughter likewise
testified that Phillips crashed into the side of the Town Car before Brown
could pull into the driveway.  She conceded in her testimony that she has a
previous theft conviction.  On cross-examination, she conceded that she also
has a conviction for hindering apprehension.

          Brown contends the evidence is
factually insufficient to prove he “rammed” the Explorer with the Town Car
because: (1) the photographs in evidence depict no significant damage to the
rear of the Town Car; (2) the presence of the bush at the end of the driveway
and the lack of evidence of skid marks along the curb or “disturbance of the
dirt, tree limbs or other signs of a car traveling in this area” calls into
question Phillips’s explanation for how the Town Car exited the driveway by
turning to collide with the front of the Explorer and driving over the edge of
the curb in that area; (3) Phillips’s credibility is lessened because he reported
on the date of the occurrence that he was not injured; and (4) Haliburton and
her daughter both testified that the collision between the vehicles happened
differently than the State alleges and Phillips claims.

          Brown’s primary challenge to the factual
sufficiency of the evidence is that the physical evidence is not consistent
with Phillips’s testimony that the Town Car “rammed” the Explorer.  However, we
“must give due deference to the fact finder’s determinations concerning the
weight and credibility of the evidence.”  Swearingen v. State, 101
S.W.3d 89, 97 (Tex. Crim. App. 2003).  The question we must decide is whether
the State offered factually sufficient evidence to prove the allegations of the
indictment, not Phillips’s characterization of the force of impact.  See
Gollihar v. State, 46 S.W.3d 243, 253, 255 (Tex. Crim. App. 2001)
(sufficiency of the evidence is measured against hypothetically correct jury
charge which “has its basis in the indictment allegations”).

          Here, the indictment alleges that
Brown “hit” the Explorer with the Town Car.  While the physical evidence may
not be wholly consistent with a “ramming,” the photograph depicting some damage
to the rear bumper of the Town Car and Phillips’s testimony regarding the close
proximity between the vehicles before the Town Car backed into the Explorer
constitute evidence from which the jury could find that the Town Car hit the
Explorer with enough force to push it into the roadway but did not “crash” into
the Explorer because the vehicles were too close together.

          The jury could likewise review the
photographic evidence and the witnesses’ testimony and conclude that the
Explorer was pushed far enough into the street that the Town Car only grazed
the curb as Brown turned and the driver’s side of the Town Car collided with
the front of the Explorer.

          Regarding the other conflicts in the
evidence, the record contains evidence impeaching the testimony of Haliburton
and her daughter.  Although Phillips told Officer Holt that he was not injured,
he explained that his knee was only “a little sore” on the date of the
occurrence but hurt quite a bit more the next day.  We must defer to the jury’s
resolution of these issues of weight and credibility.  See Swearingen,
101 S.W.3d at 97.

          Accordingly, we conclude that the
evidence is factually sufficient to prove that the Town Car Brown was driving
“hit” the Explorer Phillips was driving.  Thus, we overrule Brown’s first
issue.

Unadjudicated Juvenile Offenses

          Brown contends in his second issue
that the court abused its discretion by admitting evidence at punishment of
unadjudicated extraneous offenses he allegedly committed as a juvenile. 
However, this Court has already considered this issue in another case and
concluded that unadjudicated extraneous offenses committed by a juvenile are
admissible at punishment under article 37.07 of the Code of Criminal Procedure. 
See Dawson v. State, No. 10-01-202-CR, 2003 WL 23120062, at *7 (Tex.
App.—Waco Dec. 31, 2003, no pet.); accord Wallace v. State, 135 S.W.3d
114, 120-21 (Tex. App.—Tyler 2004, no pet.); Rodriguez v. State, 975
S.W.2d 667, 687 (Tex. App.—Texarkana 1998, pet. ref’d); McMillan v. State,
926 S.W.2d 809, 813 (Tex. App.—Eastland 1996, pet. ref’d).  Accordingly, we
overrule Brown’s second issue.

 

Stipulation to Prior Conviction

          Brown contends in his third issue that
the court abused its discretion by admitting in evidence his stipulation that
he was previously convicted of evading arrest.  He argues that such a
stipulation should be governed by the law applicable to stipulations regarding
prior DWI convictions under Tamez[1] and
its progeny.  We agree.

          According to the Court of Criminal
Appeals, such a stipulation “may be offered into evidence before the jury, but
the evidence is sufficient to support a defendant’s conviction even if the
stipulation is not given or read to the jury.”  Martin v. State, 200
S.W.3d 635, 640 (Tex. Crim. App. 2006).  Therefore, we overrule Brown’s third
issue.

Private Investigator’s Opinion Testimony

          Brown contends in his fourth issue
that the court abused its discretion by refusing to permit a private
investigator to testify as an expert “concerning the interpretation of the
damage to the respective vehicles.”

          Brown called Donald Youngblood, a
private investigator and former police officer, to testify as an expert
regarding “who was at fault” and not to provide any testimony regarding
accident reconstruction.  The State disagreed with Brown’s characterization and
argued that Youngblood was being called as an expert on accident reconstruction
and was not qualified to provide testimony in that field.

          Youngblood testified that he had about
ten years of training and experience in law enforcement before he became a
private investigator in 1979.  He has investigated more than 200 traffic
accidents.  He took a week-long course conducted by DPS in 1976 regarding
accident reconstruction.

          The admission of expert testimony is
governed by Rule of Evidence 702.  Tex.
R. Evid. 702; see Rodgers v. State, 205 S.W.3d 525, 527 (Tex.
Crim. App. 2006).  Before admitting expert testimony, the trial court must be
satisfied that: “(1) the witness qualifies as an expert by reason of his
knowledge, skill, experience, training, or education; (2) the subject matter of
the testimony is an appropriate one for expert testimony; and (3) admitting the
expert testimony will actually assist the fact-finder in deciding the case.”  Rodgers,
205 S.W.3d at 527.

          “Because the possible spectrum of
education, skill, and training is so wide, a trial court has great discretion
in determining whether a witness possesses sufficient qualifications to assist
the jury as an expert on a specific topic in a particular case.”  Id. at 527-28.  “For this reason, appellate courts rarely disturb the trial court’s
determination that a specific witness is or is not qualified to testify as an
expert.”  Id. at 528 n.9.

          Here, we conclude that the trial court
did not abuse its discretion by excluding Youngblood’s testimony because: (1)
the court would have been within its discretion to conclude that Youngblood was
in fact being called as an expert in accident reconstruction as the State
argued, Brown’s characterizations notwithstanding; see, e.g., Yarbrough’s
Dirt Pit, Inc. v. Turner, 65 S.W.3d 210, 214 (Tex. App.—Beaumont 2001, no
pet.) (“Accident reconstruction testimony and the testimony of an officer who
investigated the accident can be probative evidence of fault or lack of
fault.”); see also Ex parte Wheeler, 203 S.W.3d 317, 320 (Tex. Crim.
App. 2006) (characterizing vehicular manslaughter trial in which primary issue
was fault as “a battle between the State and defense accident-reconstruction
experts”); and (2) though Youngblood’s testimony reveals that he has
significant experience investigating traffic accidents, he has had no formal training
in this field in nearly thirty years.

          Accordingly, we overrule Brown’s fourth
issue.

Deadly Weapon Finding

          Brown contends in his fifth issue that
the evidence is factually insufficient to support the jury’s finding that he
used or exhibited a deadly weapon.

          For a vehicle which does not actually
cause serious bodily injury or death to be considered a deadly weapon, there
must be evidence that the vehicle was used in a manner that posed an actual
rather than hypothetical danger to others.  See Drichas v. State, 175
S.W.3d 795, 799 (Tex. Crim. App. 2005).  A deadly weapon finding may be upheld
if there is “evidence that another motorist was on the highway at the same time
and place as the defendant when the defendant drove in a dangerous manner.”  Id.  The determination of whether a deadly weapon is appropriate in an evading
arrest case “is a fact-specific inquiry, and the facts will not always support
such a finding.”  Id.

          Here, there is evidence that Brown, by
the manner in which he drove the Town Car, posed a danger of serious bodily
injury to Phillips when he backed into the Explorer, posed a danger of serious
bodily injury or death to Haliburton by driving backwards down the street at 45
miles per hour, and posed a danger of serious bodily injury or death to the
officers who pulled in behind his car to block his path of escape.  See Anderson v. State, No. 12-02-277-CR, 2004 WL 1202982, at *3 (Tex. App.—Tyler June 20,
2004, pet. ref’d) (not designated for publication); Hobbs v. State, No.
11-03-082-CR, 2004 WL 350475, at *3 (Tex. App.—Eastland Feb. 26, 2004) (not
designated for publication), aff’d on other grounds, 175 S.W.3d 777
(Tex. Crim. App. 2005).

          Therefore, we hold that the evidence
is factually sufficient to uphold the deadly weapon finding, and we overrule
Brown’s fifth issue.

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed February 21, 2007

Do not publish

[CRPM]

 









[1]
          Tamez v. State, 11 S.W.3d
198 (Tex. Crim. App. 2000).